**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **SAMANTHA RIVERA,** | ) | |
| **INDIVIDUALLY AND AS NEXT** | ) | |
| **FRIEND TO ANDRU CERVANTES, A** | ) | |
| **MINOR, STEPHANIE CRIM, AS NEXT** | ) | |
| **FRIEND TO JOHN HENRY** | ) | **Civil Action No.  SA-06-CA-235-XR** |
| **CERVANTES, JR. AND PATRICE** | ) | |
| **MARIE CERVANTES,** | ) | |
| **MINORS AND JOSEPHINE MENDEZ,** | ) | |
| | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| **VS.** | ) | |
| | ) | |
| **CITY OF SAN ANTONIO AND SAN** | ) | |
| **ANTONIO POLICE OFFICERS** | ) | |
| **REYNALDO MONTES AND RACHEL** | ) | |
| **BARNES, INDIVIDUALLY AND IN** | ) | |
| **THEIR OFFICIAL CAPACITIES,** | ) | |
| | ) | |
|     **Defendants.** | ) | |

**ORDER**

On this day the Court considered Defendants City of San Antonio ("City"), Officer Reynaldo Montes', and Officer Rachel Barnes' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) (Docket No. 9 & Docket No. 16).  The motions to dismiss are GRANTED in part and DENIED in part.  The Court will postpone ruling on motions to dismiss certain claims pending receipt of Plaintiffs' Rule 7 replies.

**I. Factual & Procedural Background**

Samantha Rivera alleges that on March 2, 2006, she and John Henry Cervantes, Jr., were involved in a domestic disturbance in their home at approximately 12:15 a.m.  She claims that

1

Cervantes was her common-law husband, which the City disputes.  During the domestic disturbance, Rivera called 911, but she was unable to speak to an operator because Cervantes pulled the phone cord out of the wall. Rivera and Cervantes continued to argue and struggle in their bedroom until an unexpected sound was heard emanating from the living room.  Rivera alleges that she and Cervantes both froze upon hearing this sound.  She further alleges that their bedroom was clearly lit by a ceiling light and a television[1].  At this moment, Cervantes was wearing a sleeveless undershirt that did not obstruct the view of his hands and arms.  Rivera alleges that she was standing five to six feet from Cervantes when San Antonio Police Officer Montes entered the bedroom and fired his revolver at Cervantes without any warning or command and without identifying himself.  The bullet struck Cervantes in the front torso, and he died between 10 minutes and two hours later as a result of this wound.  Rivera complains that Officers Montes and Barnes[2] prevented her from seeking medical attention for Cervantes, and they delayed his transport to a hospital for at least one hour.

Defendant Officers allege that they were responding to Rivera's 911 call when they entered the residence and heard someone crying for help.  When they entered the house, the Officers observed shattered glass on the floor and bloodstains on the wall[3].  Montes alleges that he followed

---

[1]Plaintiffs complain that Officers Montes and Barnes later reported that the bedroom was dimly lit at the time of the shooting.  Nowhere within the pleadings, however, do the Defendant officers make an assertion concerning the amount of light in the bedroom at the relevant time. Defendant City of San Antonio asserts that it is without knowledge or information sufficient to form a belief as to the truth of the Plaintiff's assertion that the bedroom was clearly lit. Defendant City of San Antonio's Original Answer, Docket No. 3, ¶ 24.

[2]Officer Barnes was the backup officer for Officer Montes.  No party asserts that her weapon was discharged during this incident.

[3]Plaintiffs' Original Complaint states that there was at least some blood present on the wall adjacent to the bedroom where Cervantes was shot.  Complaint, Docket No. 1, ¶ 25.

the sound of the cries for help to the bedroom and discovered Cervantes in the act of physically assaulting a bloodied Rivera with a series of "stab-like" blows.  Montes claims that Cervantes failed to comply with his command to stop.  Instead, Montes states that Cervantes charged at him with raised arms in a stab-like fashion.  Montes argues that this act placed him in imminent fear of death or serious bodily injury, at which point he fired his weapon, fatally injuring Cervantes.  Officers Montes and Barnes deny that EMS personnel were not called to the scene in a timely manner.

## II. Plaintiffs' Allegations

A.   **Plaintiffs bring suit against Officers Montes and Barnes in their official and individual capacities**

Plaintiffs allege that Officers Montes and Barnes, acting individually and in concert with each other and Defendant City of San Antonio, deprived Plaintiffs and Cervantes of their clearly established constitutional rights, in violation of 42 U.S.C. §§ 1981, 1983, and 1985(3).[4]  Plaintiffs allege that the Officers' actions constituted violations of Cervantes's Fourth and Fourteenth Amendment rights to be free from unreasonable seizures.  They further allege that the unjustified shooting and subsequent death of Cervantes was a violation of his Fifth and Fourteenth Amendment rights to due process.  Further, they allege that the Defendant Officers' refusal to seek immediate

---

[4]The Court assumes that the parties have standing to pursue these claims.  Standing under the Civil Rights Statutes is guided by 42 U.S.C. § 1988, which provides that state common law is used to fill the gaps in administration of civil rights suits. 42 U.S.C. § 1988(a); *Pluet v. Frasier*, 355 F.3d 381, 383-84 (5th Cir. 2004). Therefore, a party must have standing under the state wrongful death or survival statutes to bring a claim under 42 U.S.C. §§ 1981, 1983, and 1988. *See Rhyne v. Henderson County*, 973 F.2d 386, 390-91 (5th Cir. 1992)(finding that standing under Texas wrongful death and survival statutes is incorporated into the Federal Civil Rights Statutes); *Brazier v. Cherry*, 293 F.2d 401, 409 (5th Cir. 1961).  Under the Texas Survival Statute, "[a] personal injury action survives . . . in favor of the heirs, legal representatives, and estate of the injured person." TEX. CIV. PRAC. & REM. CODE § 71.021(b). Under the Texas Wrongful Death Statute, the surviving spouse, children, and parents of the deceased have the right to recover damages under the statute. *Id.* at § 71.004.

medical treatment for Cervantes constituted cruel and unusual punishment, in violation of the Eighth Amendment. Plaintiffs further allege that the Defendant Officers deprived the Plaintiffs and Cervantes of their clearly established, constitutionally protected right to familial association under the First, Fifth, and Fourteenth Amendments, and their Fifth and Fourteenth Amendment rights to due process.

Plaintiffs further allege that after the shooting, Montes, in concert with Barnes, conspired with unknown and unnamed officials of the San Antonio Police Department and with Defendant City of San Antonio to exonerate themselves and defame Cervantes. Lastly, Plaintiffs allege that Montes' use of excessive force and refusal to seek immediate medical treatment for Cervantes deprived Plaintiffs of their state constitutional rights, and gave rise to pendant state tort claims, including assault, battery, official oppression, and wrongful death.

## B.     Plaintiffs bring suit against the City

Plaintiffs allege that Defendant City of San Antonio pursued policies and customs that Officers Montes and Barnes acted upon to deprive Plaintiffs and Cervantes of their clearly established constitutional rights. The alleged constitutional deprivations violated 42 U.S.C. §§ 1981, 1983, and 1985(3). Defendant City allegedly failed to properly supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force, including those officers repeatedly accused of such acts. As a result, Defendants Montes and Barnes consciously disregarded the rights of Plaintiffs and Cervantes, knowing that City policymakers would approve their actions. Alternatively, Defendant City violated 42 U.S.C. § 1983 by ratifying the Defendant Officers' unconstitutional actions. By exonerating Defendants Montes and Barnes of official misconduct, Defendant City of San Antonio reviewed and

approved of the Defendant Officers' acts.  Plaintiffs further allege that Defendant City of San Antonio is liable for the deprivation of Plaintiffs' state constitutional rights and actions of its employees, Defendants Montes and Barnes, including assault, battery, official oppression, and wrongful death.

**C.    Defendants file motions to dismiss, or alternatively, motions for a Rule 7 reply to Defendants' qualified immunity defense**

Officers Montes and Barnes filed their motion to dismiss to preserve their defense of qualified immunity in accordance with the Local Rules of the Western District of Texas.  *See* Local Rule CV-12.  In their four page motion to dismiss, the Officers make the conclusory assertion that they are entitled to qualified immunity without engaging in any legal analysis of the qualified immunity defense as it applies to the facts of this case.  In the alternative, the Officers seek an Order requiring Plaintiffs to file a Rule 7 reply to the Officers' qualified immunity defenses.

In its motion to dismiss, the City argues that Plaintiffs' section 1983 claim against the City fails because Plaintiffs cannot establish the existence of a policy, practice, or custom that would subject the City to *Monell* liability.  The City asserts that the Officers are entitled to qualified immunity from Plaintiffs' section 1983 individual capacity claims, and a finding of no liability for the Officers necessitates a finding of no liability for the City.  The City argues that Plaintiffs' section 1983 official capacity claims against the Officers must be dismissed because official capacity suits are really suits against a governmental entity, and the City is already joined in this lawsuit.  The City argues that it is immune from punitive damages.  Finally, the City argues that all state law claims against the City and the Officers should be dismissed because the Texas Tort Claims Act does not waive the City's governmental immunity for these claims.

The Officers and the City do not directly address Plaintiffs' section 1981 claim or section 1985(3) claim. The Officers state generally that they are entitled to qualified immunity; however, they do not specify whether that immunity would apply to the section 1981 claim or the section 1985(3) claim. Additionally, Defendants apparently seek dismissal of Plaintiffs' entire lawsuit. The Court notes that Local Rule CV-7(c) states that "the specific legal authorities supporting any motion shall be cited."

### III. Legal Analysis

**A.      Standard of review for a motion to dismiss**

In considering a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the Court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). The issue is not whether the plaintiff will prevail but whether the plaintiff is entitled to pursue his complaint and offer evidence in support of his claims. *Doe v. Hillsboro Indep. Sch. Dist.*, 81 F.3d 1395, 1401 (5th Cir. 1996). The Court may not look beyond the pleadings in ruling on the motion. *Baker*, 75 F.3d at 196. Motions to dismiss are disfavored and are rarely granted. *Beanal v. Freeport-McMoran, Inc.*, 197 F.3d 161, 164 (5th Cir. 1999). Dismissal should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*. at 164 (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). However, the Court does not accept conclusory allegations or unwarranted deductions of fact as true. *Tuchman v. DSC Commc'ns Corp.*, 14 F.3d 1061, 1067 (5th Cir. 1994).

In a section 1983 claim against a public official, the Court must not accept conclusory allegations or unwarranted deductions of fact as true. *Baker*, 75 F.3d at 195. This standard requires

claims of specific conduct and actions giving rise to a constitutional violation.  *Id.*

**B.      42 U.S.C. § 1981 claim against Officers Montes and Barnes**

Plaintiffs claim that the City and the Officers violated section 1981(a), which provides that

all persons within the United States "shall have the same right in every State . . . to the full and equal

benefit of all laws and proceedings for the security of persons and property as is enjoyed by white

citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of

every kind, and to no other." Section 1981(c) protects those rights "against impairment by

nongovernmental discrimination and impairment under color of state law." To establish a Section

1981 claim, a plaintiff must show (1) that he is a member of a racial minority, (2) that the defendant

acted with an intent to discriminate against him on the basis of his race, and (3) that the defendant's

race discrimination concerned one or more of the protected activities enumerated in section 1981(a).

*Felton v. Polles*, 315 F.3d 470, 483 (5th Cir. 2002); *see also Molette v. The City of Alexandria*, No.

CV040501A, 2005 WL 2445432, *6 (W.D. La. September 30, 2005)(stating the elements when

discussing a section 1981 claim involving police misconduct).

Though section 1981 "on its face relates primarily to racial discrimination in the making and

enforcement of contracts,"[5] some other Circuits have held that racially motivated arrests and searches

made in the absence of probable cause come within *Felton*'s third requirement because they fall

---

[5]*Johnson v. Ry. Express Agency, Inc.*, 421 U.S. 454, 459 (1975).  In *Waddle*, the
defendant interpreted this statement to mean that section 1981 can reach no further than the right
to contract.  The Third Circuit stated, "We do not believe, however, that the [United States
Supreme] Court intended to read the other clauses of section 1981 out of existence and we do not
consider ourselves bound by the Court's dictum."  564 F.2d at 1027 n.13.  "The [Civil Rights]
Act [of 1866] was not intended to have merely limited effect; rather, it was to eradicate all
discrimination against blacks and to secure for them full freedom and equality in civil rights." *Id.*
at 1028. Thus, section 1981 by its terms is directed against racially motivated discrimination.

within the "equal benefits" and "like punishments" clauses of Section 1981(a). *See Alexis v. McDonald's Restaurants of Mass., Inc.*, 67 F.3d 341, 348 (1st Cir.1995); *see Cunningham v. Sisk*, 136 Fed. Appx. 771, 775 (6th Cir. 2005)(noting the split among the Circuits on the issue but refusing to adopt a position); *Mahone v. Waddle*, 564 F.2d 1018, 1028 (3d Cir.1977). In *Waddle*, the Third Circuit concluded that "[d]espite the sparsity of precedent, a natural and commonsense reading of the statute compels the conclusion that section 1981 has broad applicability beyond the mere right to contract." 594 F.2d at 1028. The Third Circuit based this conclusion on a textual reading of the statute:

> Plaintiffs have alleged that the City's police officers, clothed with the authority of the City and the state and motivated by racial bias, verbally and physically abused them, falsely arrested them, and gave false testimony against them. It seems to us that plaintiffs have in effect alleged that because they are black they were subjected to officially inflicted "punishment, pains, (and) penalties" other than those to which white persons are subject. In alleging that because of their race they were arrested without probable cause or warrant and that they were convicted by false testimony of crimes they did not commit, plaintiffs have in effect charged that the City's officers denied them the same "full and equal benefit of . . . laws and proceedings for the security of persons . . . as is enjoyed by white persons." We therefore believe that the facts alleged fall within the broad language of both the equal benefits and like punishment clauses of section 1981.

*Id.* at 1028. Based on *Waddle*, it would appear that Plaintiffs have alleged a valid section 1981 claim against the City and Officers.

A review of relevant case law indicates that Plaintiffs must carry a heavy burden in order to overcome summary judgment on this claim. For example, in *Brissett v. Baltimore Police Department*, the Fourth Circuit held that the plaintiff must prove specific facts "sufficient to establish intentional discrimination" to state a section 1981 claim that will survive summary judgment in civil rights cases involving police misconduct, excessive force, and wrongful death

("police misconduct cases").  No. 97-6898, 1998 WL 195945, *3 (4th Cir. April 6, 1998).  In

*Brissett*, the Fourth Circuit affirmed summary judgment for the defendant on the section 1981 claim

because the plaintiff "provided nothing more than conclusory allegations of discrimination" and

failed to demonstrate that the defendant officer's actions were "racially motivated." *Id*.  In *Glass v.*

*Village of Sauk*, the Seventh Circuit stated that plaintiff carries the "burden on proving racial

animus" when asserting a section 1981 claim in police misconduct cases.  No. 94-2782, 1996 WL

149342, *2 (7th Cir. March 28, 1996).  According to the Seventh Circuit, a plaintiff can prove racial

animus either through "direct evidence" or through "a theory of disparate treatment by showing less

favorable treatment because of race." *Id.*  However, proceeding under a disparate treatment theory

requires that "a plaintiff come forward with some type of comparative evidence showing that

members of different races are treated differently" by the police. *Id.*  The mere fact that the alleged

victim is a different race than the defendant is not enough to establish racial animus. *Id.*

The Fifth Circuit has yet to definitively rule on whether a section 1981 claim is available to

plaintiffs in police misconduct cases.  In a race discrimination case involving a state employer, the

Fifth Circuit held that "when a state employee seeks to hold an individual fellow state employee

liable in damages for violation of § 1981, such claim must also be pursued under the remedial

provisions of § 1983." *Felton*, 315 F.3d at 482.  Although *Felton* involved the "interference with

contract" prong of section 1981, the holding appears to be applicable to all violations of section

1981. *Felton* is clear that the qualified immunity defense is available in section 1981 cases. *Id.* at

482.

Very few district courts in the Fifth Circuit have analyzed section 1981 claims involving

police misconduct.  The Northern District of Texas implied that a plaintiff could prevail on a section

9

1981 claim involving police misconduct based on disparate treatment—"i.e. that he was treated differently [by the police] than someone else similarly situated." *Jacobson v. City of N. Richland Hills*, No. 4:04-CV-421-Y, 2006 WL 1317014, *5 (N.D. Tex. May 15, 2006); *see also Stumpf v. City of Waxahachie*, No. 3:04-CV-946-M, 2004 WL 2413306, *3 (N.D. Tex. Oct. 26, 2004). *In Molette*, the Western District of Louisiana implied that a plaintiff could prevail on a section 1981 claim involving police misconduct if the police officer "intended to discriminate against him [the plaintiff] because he was a member of a racial minority." 2005 WL 2445432, at *6.

Plaintiffs' section 1981 claim is one paragraph long and does not include a statement that Defendants' actions were motivated by intentional discrimination and racial animus. Complaint, ¶ 41. The Court interprets the Officers' motion to dismiss as asserting a qualified immunity defense to Plaintiff's section 1981 claim, and the Court finds that Plaintiffs' Complaint lacks the specificity to overcome this defense. Therefore, the Court ORDERS Plaintiff to file a Rule 7 reply to Defendant's qualified immunity defense to the 1981 claim against Officer Montes and Barnes. *Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996); *See Reyes v. Sazan*, 168 F.3d 158, 161 (5th Cir. 1999)("Trial courts ought routinely require plaintiffs to file a reply under [Rule] 7(a) to qualified immunity defenses."); *see also Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2004) ("Heightened pleading in qualified immunity cases requires that plaintiffs rest their complaint on more than conclusions alone and plead their case with precision and factual specificity."). In response to a defense of qualified immunity, "the court may, in its discretion, insist that a plaintiff file a [Rule 7] reply tailored to an answer pleading the defense of qualified immunity." 47 F.3d at 1433-34; *see also Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir.2004). Defeating a defendant's defense under "the immunity doctrine will ordinarily require such a reply," and is properly ordered "when greater detail

might assist." *Schultea*, 47 F.3d at 1434. The Court will postpone ruling on the motion to dismiss Plaintiffs' section 1981 claim against Officers Montes and Barnes pending receipt of a Rule 7 reply to Defendants' qualified immunity defense.

**C.     42 U.S.C. § 1983 official capacity claims against Officers Montes and Barnes**

Suing a government official in his official capacity is another way of pleading against the entity of which the official is an agent. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985). In other words, an official capacity suit is to be treated as a suit against the entity. *Id.* "An official capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 171. Because the City has also been named as a party, no purpose is served by allowing Plaintiffs' duplicative section 1983 official capacity claims against Officers Montes and Barnes to proceed. Defendants' motion to dismiss Plaintiffs' section 1983 claims against Officers Montes and Barnes in their official capacity is GRANTED.

**D.     42 U.S.C. § 1983 individual capacity claims against Officers Montes and Barnes**

Officers Montes and Barnes move to dismiss Plaintiffs' section 1983 claims against them in their individual capacities by asserting qualified immunity. Public officials acting within the scope of their official duties are shielded from civil liability by the qualified immunity doctrine. *Harlow v. Fitzgerald*, 457 U.S. 800, 815-19 (1982). Government officials are entitled to qualified immunity "insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 818.

In order to establish that the defendants are not entitled to qualified immunity, plaintiffs must satisfy a two-part test: (1) under existing law, does the plaintiff allege a violation of an actual, clearly established constitutional or federal statutory right; and (2) if so, was the defendant's conduct

objectively unreasonable in the light of clearly established law at the time of that conduct. *Felton*, 315 F.3d at 473; *Hare v. City of Corinth, Miss.*, 135 F.3d 320, 325 (5th Cir. 1998).

Qualified immunity "serves to shield a government official from civil liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law." *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 456 (5th Cir. 2001). To that end, where a defendant pleads qualified immunity and shows he is a governmental official whose position involves the exercise of discretion, the plaintiff then has the burden "to rebut this defense by establishing that the official's allegedly wrongful conduct violated clearly established law." *Pierce v. Smith*, 117 F.3d 866, 871-72 (5th Cir.1997). Courts in the Fifth Circuit do "not require that an official demonstrate that he did not violate clearly established federal rights; our precedent places that burden upon plaintiffs." *Id.*

The second prong "focuses not only on the state of the law at the time of the complained of conduct, but also on the particulars of the challenged conduct and/or of the factual setting in which it took place." *Pierce*, 117 F.3d at 872. A "defendant's acts are . . . objectively reasonable unless all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the United States Constitution or the federal statute as alleged by the plaintiff." *Thompson*, 245 F.3d at 457.

Plaintiffs argue that Montes' use of excessive deadly force was an unreasonable seizure, thereby depriving Cervantes of his constitutional right be free from unreasonable seizures guaranteed under the Fourth and Fourteenth Amendments of the U.S. Constitution. A claim that a law enforcement officer used excessive force in the course of an arrest is analyzed under the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). An excessive-use-of-force claim

requires a plaintiff to prove 1) an injury, which 2) resulted directly and solely from the use of force that was clearly excessive to the need, and the excessiveness of which was 3) objectively unreasonable. *Ikerd v. Blair*, 101 F.3d 430, 433-34 (5th Cir.1996). This determination "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

  Plaintiffs' facts, as alleged, aver that Cervantes was unarmed and standing at least five feet from Rivera in a clearly lit bedroom.  It may be reasonably inferred from the Plaintiffs' pleaded facts, viewed in a light most favorable to the non-moving party, that Cervantes was shot before he was in any position to raise his arm and "charge" at Montes.  The facts, as alleged in the complaint, also note that Montes did not identify himself before firing his service revolver.  If these facts are true, Montes' actions may have violated the standard for reasonable seizures under the Fourth Amendment, that a police officer may not seize an unarmed, non-dangerous suspect by shooting him dead.  *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985).  Plaintiffs have thus plead sufficient facts under the Fifth Circuit's heightened pleading standard to show, if proven, that Montes' conduct violated Cervantes's clearly established constitutional to be free from excessive force.  *See Baker v. Putnal*, 75 F.3d 190, 195 (5th Cir. 1996); *Tennessee*, 471 U.S. at 11-12; *Graham v. Connor*, 490 U.S. 386, 395 (1989). The motion to dismiss the section 1983 individual capacity claim against Officer Montes for the use of excessive force is DENIED.

  Officer Barnes did not fire her weapon at Cervantes; therefore, Plaintiffs have no excessive force claim against her.   However, the failure to protect a suspect from the use of excessive force

by other officers is a basis for a section 1983 claim. *Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001). Thus, Plaintiffs' have a section 1983 individual capacity claim against Officer Barnes for failure to protect from the use of excessive force. An officer will be liable for failure to protect if the plaintiff establishes that the official acted with subjective deliberate indifference to his constitutional rights. *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir.1999). Deliberate indifference occurs when the officer "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare*, 74 F.3d at 650. In other words, deliberate indifference is the subjective intent to cause harm, and negligent conduct is not enough. *Id.* at 648. Based on the Complaint, it is unclear whether Barnes had an opportunity to prevent Montes from using excessive force against Cervantes. If Barnes did not appear in the bedroom until after Montes shot Cervantes, then dismissal of this claim pursuant to Rule 12(b)(6) might be warranted. Therefore, the Court ORDERS Plaintiff to file a Rule 7 reply to Defendant's qualified immunity defense to the 1983 individual capacity claim against Officer Barnes for failure to protect from excessive force. The Court will postpone ruling on the motion to dismiss Plaintiffs' section 1983 individual capacity claim against Officer Barnes for failure to protect from excessive force pending receipt of a Rule 7 reply to Defendants' qualified immunity defense.

Plaintiffs allege that Montes' use of excessive and unreasonable force against Cervantes also violated Cervantes's due process rights under the Fifth and Fourteenth Amendments. Because the Fourteenth Amendment contains a Due Process Clause independent from that found in the Fifth Amendment, and Defendants acted under color of state law rather than federal law, Plaintiffs' due process claims must be limited to the Fourteenth Amendment. Furthermore, the Supreme Court has held that constitutional claims asserting use of excessive force should be limited to analysis under

the Fourth Amendment, not substantive due process. *Graham v. Connor*, 490 U.S. 386, 395 (1989).

Plaintiffs' claim that use of excessive deadly force deprived Cervantes of his Fourteenth Amendment

due process rights is analytically ill-fitting and unnecessarily cumulative. *Id.* Plaintiffs do not have

a section 1983 individual capacity claim against Officer Montes or Barnes for violations of

Cervantes's due process rights under the Fifth and Fourteenth Amendments. The motion to dismiss

this claim is GRANTED.

Plaintiffs further complain that Cervantes was deprived of a pretrial detainee's constitutional

right to medical care by Officers Montes and Barnes. *See Baker*, 75 F.3d at 198 (referring to person

shot and killed in his vehicle by a police officer as a pretrial detainee). A pretrial detainee's

constitutional right to medical care, whether in prison or other custody, flows from the procedural

and substantive due process guarantees under the Fourteenth Amendment. *Wagner v. Bay City*, 227

F.3d 316, 324 (5th Cir. 2000). *Wagner* also holds that liability for failing to provide medical care

attaches if the plaintiff can show that a state official acted with deliberate indifference to a substantial

risk of serious medical harm and injuries resulted. *Id*. Deliberate indifference in the context of an

episodic failure to provide reasonable medical care to a pretrial detainee means that: 1) the official

was aware of facts from which an inference of substantial risk of serious harm could be drawn; 2)

the official actually drew that inference; and 3) the official's response indicates the official

subjectively intended that harm occur. *Thompson v. Upshur County, Tex*., 245 F.3d 447, 458-59 (5th

Cir. 2001). However, deliberate indifference cannot be inferred merely from a negligent or even a

grossly negligent response to a substantial risk of serious harm. *Id* at 459.

In support of this allegation, Plaintiffs claim that Cervantes was probably alive while Montes

and Barnes refused him medical attention for at least one hour, despite their knowledge that there

was an obvious need for treatment. Complaint, ¶ 35.  Rivera claims that despite this obvious need, Defendants did not allow her to come to the decedent's aid; this caused further suffering and made death more certain.  If Plaintiffs' allegations are taken as true, there are sufficient facts to impart subjective knowledge of a substantial risk of medical harm to the Defendants. *See Wagner*, 227 F.3d at 324.  If it is inferred that Cervantes posed no continuing threat after the shooting, the Defendants' alleged acts may be clearly unreasonable. *Id.*  There must be some underlying fact that establishes, at least circumstantially, the defendants' subjective intent to do harm. *See Wagner*, 227 F.3d at 324. Viewing the facts in the light most favorable to Plaintiffs, the Court concludes that Plaintiffs have adequately pled a section 1983 individual capacity claim against Officer Montes and Barnes for deprivation of a pretrial detainee's constitutional right to medical care.  The motion to dismiss this claim is DENIED.

Plaintiffs aver that Cervantes was alive between 10 minutes and two hours after the shooting. The Defendant Officers' refusal to seek medical assistance for at least one hour thus led to unnecessary pain and suffering on the part of Cervantes.  Plaintiffs allege that this constitutes cruel and unusual punishment in violation of the decedent's Eighth Amendment rights.  The Eighth Amendment claim does not apply, however, because only those persons convicted of a crime may invoke its protection, and Cervantes was not convicted of any crime.  *Baker*, 75 F.3d at 199. Cervantes does not have a section 1983 individual capacity claim against Officer Montes or Barnes for cruel and unusual punishment.  The motion to dismiss this claim is GRANTED.

Plaintiffs also contend that they were deprived of their clearly established, constitutionally protected right to familial association without due process of law.  In *Kipps v. Caillier*, the appellant football coach alleged that he had been released from the defendant state college's employ because

his son had agreed to play football at another school.  *Kipps v. Caillier*, 205 F.3d 203, 206 (5th Cir.

2000).  In *Kipps*, the Fifth Circuit recognized a clearly established constitutional liberty interest in

familial association; however, it concluded that the defendant was entitled to qualified immunity

because the defendant's actions were objectively reasonable. *Id.*   Plaintiffs allege that Defendant

Montes' use of excessive deadly force, in conjunction with Defendant Barnes' failure to seek

immediate medical attention, constituted state interference with the familial association between

Plaintiffs and Cervantes.

      This Court could only locate one district court case from the Fifth Circuit that addressed a

claim for deprivation of the right of familial association in a police misconduct case.  *See Molette*,

2005 WL 2445432, at * 5.  The *Molette* Court relied on the Tenth Circuit's decision in *Trujillo v.*

*Board of County Commissioners*, 768 F.2d 1186, 1187 (10th Cir. 1985).  *See Rhyne v. Henderson*

*County*, 973 F.2d 386, 391 (5th Cir. 1992)(briefly discussing *Trujillo* in the context of a section 1983

claim for deprivation of the right of familial association).

      In *Trujillo*, the Tenth Circuit concluded that to state a claim for deprivation of familial

association under section 1983, a plaintiff must allege that the defendant intended to interfere with

a particular relationship protected by the freedom of intimate association.  *Id*. at 1190.  Negligence

on the part of the state actor will not support the claim.  *Id.*  The Tenth Circuit stated that the alleged

conduct by the state, however improper or unconstitutional with respect to the deceased, will work

an unconstitutional deprivation of the freedom of intimate association only if the conduct was

directed at that right.  *Id.*

      The *Molette* Court dismissed the claim because "Plaintiffs have not alleged Defendants

intentionally deprived them of their right to familial association."  2005 WL 2445432, at *5.

17

Considering the fact that Plaintiffs' Complaint fails to include an allegation of intentional deprivation,[6] the Court ORDERS Plaintiff to file a Rule 7 reply to Defendant's qualified immunity defense to the 1983 individual capacity claim against Officer Montes and Barnes for deprivation of the right to familial association. The Court will postpone ruling on the motion to dismiss Plaintiffs' section 1983 individual capacity claim against Officer Montes and Barnes for deprivation of the right to familial association pending receipt of a Rule 7 reply to Defendants' qualified immunity defense.

The Court  now considers whether it would be clear to a reasonable officer that Officer Montes' conduct was unlawful in the situation confronted.  *Mace v. City of Palestine*, 333 F.3d 621, 623 (5th Cir. 2003).  Plaintiffs allege that Cervantes was unarmed and standing at least five feet from Rivera in a clearly lit bedroom.  It may be reasonably inferred from Plaintiffs' plead facts, viewed in a light most favorable to the non-moving party, that Cervantes was shot before he was in any position to raise his arm and "charge" at Officer Montes.  The facts as alleged in the complaint also note that Officer Montes did not identify himself before firing his service revolver.  If these facts are taken as true, Officer Montes' actions were objectively unreasonable in light of the circumstances. *Tennessee v. Garner*, 471 U.S. 1, 11-12 (1985).   No objectively reasonable police officer would consider the shooting of an unarmed man, without provocation, to be a legal act.  *See Id.* Furthermore, Plaintiffs allege that both officers refused Cervantes medical attention for at least one hour after the shooting, despite their knowledge that there was an obvious need for treatment.  If these facts are taken as true, Officer Montes' and Officer Barnes' actions were objectively unreasonable in light of the circumstances.  *See Mace*, 333 F.3d at 625-626.

After filing their Rule 7 reply, Plaintiffs might have viable section 1983 individual capacity

---

[6]See Complaint, ¶ 51.

claims against Officer Montes based on violations of these three constitutional rights: (1) use of excessive force, (2) deprivation of a pretrial detainee's constitutional right to medical care, and (3) deprivation of the right to familial association.  After filing their Rule 7 reply, Plaintiffs might have viable section 1983 individual capacity claims against Officer Barnes based on violations of these three constitutional rights: (1) failure to protect for the use of excessive force, (2) deprivation of a pretrial detainee's constitutional right to medical care, and (3) deprivation of the right to familial association.

**C.      42 U.S.C. §1983 claim against the City**

In order to properly state a section 1983 claim against Defendant City of San Antonio, Plaintiffs must identify (1) an official policy or custom (2) of the city's policymaker (3) that caused[7] (4) the plaintiffs to be subjected to a deprivation of a constitutional right.  *Palmer v. City of San Antonio*, 810 F.2d 514, 516 (5th Cir. 1987)(quoting *Grandstaff  v. City of Borger*, *Texas*, 767 F.2d 161, 169 (5th Cir. 1985)).   Municipalities are not liable for the constitutional torts of their employees, unless those employees act pursuant to official policy.  *Monell*, 436 U.S. at 663 n.7 (1978)(stating the doctrine of *respondeat superior* is not a basis for rendering municipalities liable under section 1983 for the constitutional torts of their employees).  Defendant City moves to dismiss Plaintiffs' claims on the grounds that Plaintiffs have failed to allege any specific policy or custom maintained by the City that caused Plaintiffs' alleged constitutional deprivations.

Plaintiffs must first allege facts sufficient to show, if proven, that Defendant City of San

---

[7]The causation requirement of a properly pleaded § 1983 claim is also variously described as the "moving force" or "affirmative link" requirement.  *See Grandstaff v. City of Borger*, 767 F.2d 161, 169 (5th Cir. 1985); s*ee also Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978) (clarifying the causal requirement by holding that a governmental unit's policy or custom must be "the moving force of the constitutional violation in order to be held liable under a § 1983 claim).

Antonio, through its policy makers, formulated or had constructive knowledge of an official policy that sanctioned or encouraged a deprivation of rights protected by the Constitution. *See Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984). Official policy is:

> 1. A policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or
>
> 2. A persistent, widespread practice of city officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Id.* Under the first definition of official policy, Plaintiffs contend that Defendant City, through its police department as the policy-making authority, approved and adopted its employees' actions. This was accomplished by approving Defendant Montes' and Barnes' alleged use of excessive force after reviewing their conduct and exonerating them. Assigning section 1983 liability to a municipality in this manner is referred to as the "ratification theory." *See Milam v. City of San Antonio*, 113 Fed. Appx. 622, 626 (5th Cir. 2004).

In support of their allegations against the City, Plaintiffs maintain that the police department was fully aware that its employees' account of the events in question was false. In response, Defendant City cites *Gonzales v. Westbrook* as supporting the contention that courts generally agree that the ratification theory applies only when the reviewing final policymaker approves a subordinate's decision and the basis for the decision prior to or contemporaneously with the alleged section 1983 violation. *Gonzales v. Westbrook*, 118 F. Supp.2d 728 (W.D. Tex. 2000). Defendant City notes that *post hoc* approval of prior conduct cannot possibly be the "moving force" behind the police officers' alleged violations. While this rationale has some force of logic, a review of relevant case law offers little support for this argument.

The Supreme Court has clarified when a decision by a government official might be enough to establish an unconstitutional municipal policy. *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988).

The Court held:

> when a subordinate's decision is subject to review by the municipality's authorized
> policymakers, they have retained the authority to measure the official's conduct for
> conformance with their policies.   If the authorized policymakers approve a
> subordinate's decision and the basis for it, their ratification would be chargeable to the
> municipality because their decision is final.

*Id*.  In *Harris v. Victoria Independent School District*, there was evidence to suggest that the plaintiff

school teacher had been reassigned to another school by the defendant school district in retaliation

for expressing views about the effectiveness of a school principal.  168 F.3d 216, 219 (5th Cir.

1999).  The plaintiff  filed a grievance against the superintendent with the school board.  *Id*  The

Fifth Circuit held that the school board's *post hoc* review and approval of action already taken by

the superintendent was representative of official policy.  *See id.* at 225 (stating that "[t]he Board of

Trustees' action in affirming Superintendent Brezina's decision to transfer the Plaintiffs was an act

that may fairly be said to represent official policy because of the Board's status as a policymaker").

There is no indication from any of these cases that ratification of a subordinate's action by a final

policymaker *must* take place before or during the implementation of that decision in order to hold

a municipality liable under section 1983.

Under the second definition of policy, Plaintiffs allege that Defendant City has or should have

actual or constructive knowledge of the persistent, widespread use of excessive force by police

officers that has become so common and well settled as to constitute a custom that fairly represents

municipal policy.  *Webster v. City of Houston*, 735 F.2d 838, 842 (5th Cir. 1984).  "To demonstrate

governmental policy or custom under §1983, a plaintiff must at least show: a pattern of similar

incidents in which citizens were injured and endangered by intentional or negligent police

misconduct and/or that serious incompetence or misbehavior was general or widespread throughout

the police force."  *Paz v. Weir*, 137 F. Supp.2d 782, 799 (S.D. Tex 2001).  Sufficiently numerous

prior incidents of official misconduct may tend to prove the existence of the custom and acceptance of that custom by municipal policymakers. *Gonzales*, 118 F. Supp.2d at 734. Constructive knowledge of a custom by the policymaker "may be inferred from the widespread extent of the practices, general knowledge of their existence, manifest opportunities, and official duty of responsible policymakers to be informed, or combinations of these." *Pineda v. City of Houston*, 291 F.3d 325, 330 n.15 (5th Cir. 2002) (quoting *Spell v. McDaniel*, 824 F.2d 1380, 1391 (4th Cir. 1987)).

Plaintiffs maintain that the internal affairs section of the San Antonio Police Department has received hundreds of complaints involving the use of excessive force by police officers without ever having taken disciplinary action.[8] This has resulted in a failure to supervise, discipline, counsel, or otherwise control police officers who are known or should be known to engage in the use of excessive force. In *Pineda*, the Fifth Circuit held that 13 incidents of misconduct by Houston Police Officers was legally insufficient to prove a that a custom existed of which the City of Houston should have had constructive knowledge. *Pineda*, 291 F.3d at 329. In contrast, Plaintiffs allege that the City has received hundreds of complaints. In order to survive summary judgment on this claim, Plaintiffs will be required to produce evidence of the date, the nature, and the City's allegedly inadequate response to these complaints. For purposes of this motion to dismiss, Plaintiffs have alleged sufficient facts to show, if proven, that the policy requirement for municipal liability under section 1983 is met under either definition of policy.

Defendant City next argues that Plaintiffs have failed to allege sufficient facts to show that any policy or custom maintained by the City was the "moving force" behind the deprivation of

---

[8]Plaintiffs do not indicate the time period in which these complaints were received or what type of police misconduct was involved.

Plaintiffs' constitutional rights.  Plaintiffs allege that Defendants Montes and Barnes were part of "a police code of silence wherein other officers and supervisors habitually cover[ed] up use of excessive force by fabricating accounts to the media and in official reports and internal affairs investigations."[9]  When the facts alleged are viewed in a light most favorable to the non-movant, it may be inferred that Defendant Montes used excessive deadly force with the knowledge that no disciplinary action would be taken against him by the Police Department.  This is sufficient to allege that Defendant City of San Antonio's policy was the "moving force" behind the violation.  *See Grandstaff v. City of Borger*, 767 F.2d 161, 170 (5th Cir. 1985)("Where police officers know at the time they act that their use of deadly force in conscious disregard of the rights and safety of innocent third parties will meet with the approval of city policymakers, the affirmative link/moving force requirement is satisfied.").

"It is clear that a municipality's policy of failing to train its police officers can give rise to § 1983 liability."  *Pineda,* 291 F.3d at 331 (quoting *Brown v. Bryan County*, 219 F.3d 450, 457 (5th Cir. 2000)).  To establish the City's liability under a failure to train theory, Plaintiffs must show:  (1) inadequate training procedures; (2) inadequate training caused the police officer to use excessive force; and (3) the deliberate indifference of municipal policymakers.  *Id*. at 331-32.  "[T]he focus must be on the adequacy of the training program in relation to the tasks the particular officers must perform.  The inadequacy of the training must be closely related to the injury."  *Id.* at 332.  Again dismissal is not appropriate when evidence might be adduced showing that a police officer has received no or inadequate training in handcuff policies, offenders' rights, detainee relations, or Fourth Amendment protections.  Plaintiff alleges that Defendants Montes and Barnes received no or

---

[9]Complaint, ¶ 45(c).

inadequate training.  Similar to Plaintiff's "policy or custom" claim, the Court declines to dismiss the failure to train claim.  The motion to dismiss the section 1983 claim against the City is DENIED.

Finally, the City argues that Plaintiffs have failed to sufficiently allege that any of their constitutional rights were violated.  It has already been determined that Plaintiffs have alleged sufficient facts to show, if proven, that there were indeed deprivations of clearly established constitutional rights.

**D.      42 U.S.C. §1985(3) claim against Officers Montes and Barnes and the City**

Plaintiffs allege that Defendants Montes and Barnes conspired to deprive Cervantes of his constitutional right to medical care in violation of 42 U.S.C. § 1985(3).   To maintain a claim under section 1985(3), a plaintiff must allege that "(1) the defendants conspired (2) for the purposes of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) one or more of the conspirators committed some act in furtherance of the conspiracy; whereby (4) another person is injured in his person or property or deprived of having and exercising any right or privilege of a citizen of the United States; and (5) the action of the conspirators is motivated by racial animus." *Horaist v. Doctor's Hosp. of Opelousas*, 255 F.3d 261, 270 n. 12 (5 Cir.2001)(quoting *Wong v. Stripling*, 881 F.2d 200, 202-3 (5 Cir.1989)).   Section 1985(3) conspiracy claims are subject to the qualified immunity defense.  *See Sullivan v. County of Hunt, Tex.*, 106 Fed. Appx. 215, 220 (5th Cir. 2004); *see Green v. Tilley*, No. 2:04-CV-0819, 2006 WL 220847, *4 (W.D. La. Jan. 23, 2006).

Plaintiffs failed to allege that class-based animus motivated the section 1985(3) conspiracy. *Hilliard v. Ferguson*, 30 F.3d 649, 653 (5th Cir. 1994).  The only fact asserted by Plaintiffs to support their conspiracy claim is that Defendants Montes and Barnes acted in concert to prevent

immediate medical care and to fabricate a false story of events.   However, even if there are sufficient facts to show that such a conspiracy existed, Plaintiffs have failed to allege sufficient facts to show that denial of immediate medical care to Cervantes was a section 1985 violation.   There are no underlying facts to suggest that the Defendants conspired to violate Cervantes's rights based on his membership in a protected class of persons. *See Granville v. Hunt*, 411 F.2d 9, 11 (5th Cir. 1969).

Aside from the failure to allege that class-based animus motivated the conspiracy, the Fifth Circuit considers a police department and its officers to be a single legal entity that is incapable of conspiring with itself.   *Thompson v. City of Galveston*, 979 F. Supp. 504, 511 (S.D. Tex. 1997); *Villaneuva v. San Marcos Indep. Sch. Dist.*, No. A-05-CA-455 LY, 2006 WL 2591082, *8 (W.D. Tex. Sept. 7, 2006).   The Fifth Circuit and several district courts within the Circuit have applied this "intracorporate conspiracy" doctrine to entities other than corporations. *See, e.g., Thompson*, 979 F. Supp. at 511 (Galveston Police Department and its employees constitute single legal entity); *Baldwin v. University of Tex. Medical Branch at Galveston*, 945 F. Supp. 1022, 1034 (S.D. Tex. 1996)(medical school and its employees); *Hilliard*, 30 F.3d at 653(school board and its members); *Hankins v. Dallas Indep. Sch. Dist.*, 698 F.Supp. 1323, 1330 (N.D. Tex.1988)(high school and its officials). Even if Plaintiffs filed a Rule 7 reply stating that class-based animus motivated the conspiracy, their section 1985(3) conspiracy claim would fail because of the intracorporate conspiracy doctrine.   Consequently, Defendants motion to dismiss the section 1985(3) conspiracy claim against the City and Officers Montes and Barnes is GRANTED.

**E.**     **State law constitutional claims against Officers Montes and Barnes and the City**

Plaintiffs bring suit against Defendants City of San Antonio and Officers Montes and Barnes for pendant state constitutional claims.   Under Texas law, the state constitution does not give rise

to any private right of action for damages for the violation of state constitutional rights, other than state taking of private property for public use. *See City of Beaumont v. Bouillion*, 896 S.W.2d 143, 149 (Tex. 1995). There is no state constitutional tort in Texas. *Id*. Only equitable remedies are available for violating state constitutional rights. *Id*. Therefore, the Court GRANTS Defendants' motion to dismiss all state constitutional claims seeking damages against all Defendants.

**F.      State law intentional tort claims against the City**

        The City moves for dismissal of Plaintiffs' state law claims against the City arguing that the City is immune and Plaintiffs' claims are not authorized by the Texas Tort Claims Act.  In *Medrano v. City of Pearsall*, 989 S.W.2d 141, 143-44 (Tex. App.–San Antonio 1999, no pet.), the Court of Appeals explained:

> Under the doctrine of sovereign immunity, a governmental unit is not liable for the torts of its officers or agents in the absence of a constitutional or statutory provision creating such liability. *State v. Terrell*, 588 S.W.2d 784, 785 (Tex.1979). The Texas Tort Claims Act ("TTCA") creates a limited waiver of sovereign immunity. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 1997). In order for immunity to be waived under the TTCA, the claim must arise under one of the three specific areas of liability for which immunity is waived, and the claim must not fall under one of the exceptions from waiver. *Alvarado v. City of Brownsville*, 865 S.W.2d 148, 155 (Tex. App.–Corpus Christi 1993), *rev'd on other grounds*, 897 S.W.2d 750 (Tex. 1995). The three specific areas of liability for which immunity has been waived are: (1) injury caused by an employee's use of a motor-driven vehicle; (2) injury caused by a condition or use of tangible personal or real property; and (3) claims arising from premise defects. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.021 (Vernon 1997). However, the waiver of immunity does not extend to claims arising out of intentional torts. *See* Tex. Civ. Prac. & Rem. Code Ann. § 101.057 (Vernon 1997).

It is undisputed that the City is a governmental entity to which the doctrine of governmental immunity is applicable.  The TTCA waives a city's governmental immunity for damage claims arising from its governmental functions, including police actions, but only to the extent specified in the Act.  Tex. Civ. Prac. & Rem. Code § 101.0215.  Plaintiffs' claims are not the type of claims

26

involving a waiver of immunity under the Texas Tort Claims Act, and therefore, the City is immune

from suit on Plaintiffs' state law intentional tort claims (assault, battery, false imprisonment,

malicious prosecution). The motion to dismiss the state law intentional tort claims against the City

is GRANTED.

**G.   State negligent hiring and negligent training claim against the City**

The Texas Supreme Court has held that the intentional tort exception of the TTCA cannot

be circumvented merely by alleging that the government was negligent in supervising the

employee-tortfeasor. *Delaney v. Univ. of Houston*, 835 S.W.2d 56, 60 (Tex. 1992).  In *Medrano*, the

Court of Appeals affirmed summary judgment on Plaintiffs' negligent hiring and negligent training

in connection with Plaintiff's intentional tort claim against the employee-tortfeasor based on

*Delaney*.  989 S.W.3d at 144-45.  *Medrano* demonstrates that mere allegations of negligence will

not suffice. *Id*  Additionally, negligent hiring and negligent training are areas of liability that have

not been waived by the TTCA.  "[A]llegations of negligent supervision do not satisfy the limited

waiver of immunity contained within the" TTCA. *Univ. of Tex. Health Sci. Ctr. v. Schroeder*, 190

S.W.3d 102, 106 (Tex. App.–Houston [1st Dist.] 2005, no pet.); *accord City of San Antonio v.

Parra*, 185 S.W.3d 61, 64 (Tex. App.–San Antonio 2005, no pet.); *City of Garland v. Rivera*, 146

S.W.3d 334, 338 (Tex. App.–Dallas 2004, no pet.); *Gainesville Mem'l Hosp. v. Tomlinson*, 48

S.W.3d 511, 514 (Tex. App.–Fort Worth 2001, pet. denied); *see also Tex. A & M Univ. v. Bishop*,

156 S.W.3d 580, 583 (Tex. 2005); *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex.

2001). A negligent-training claim alleges the use of "information," which "is not tangible personal

property, since it is an abstract concept that lacks corporeal, physical, or palpable qualities." *Petta*

at 580; *see* TEX. CIV. PRAC. & REM. CODE § 101.021(2).   Therefore, the motion to dismiss the

negligent hiring and negligent training claim against the City is GRANTED.

## H.    State law intentional tort claims against Officers Montes and Barnes

Officers Montes and Barnes contend that Plaintiffs' suit against the City is an election of remedies pursuant to the Texas Tort Claims Act that bars Plaintiffs' state tort claims against the individual defendants.  The election of remedies provision of the Texas Tort Claims Act, TEX. CIV. PRAC. & REM. CODE § 101.106, provides in part as follows:

> (a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit regarding the same subject matter . . . .

> (e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed on the filing of a motion by the governmental unit.

Defendants' reliance on this provision is misplaced. As previously discussed, Plaintiffs assert claims that arise out of intentional torts for which sovereign immunity has not been waived. TEX. CIV. PRAC. & REM. CODE § 101.057(2) ("This chapter does not apply to a claim arising out of assault, battery, false imprisonment, or any other intentional tort"). Plaintiffs have no claims against the City pursuant to the Texas Tort Claims Act, and thus the elections of remedies provision of that Act has no application. *See Patterson v. Housing Authority*, No. SA-05-CA-1155-XR, 2006 WL 2322887 at *12-13 (W.D. Tex. July 27, 2006) (concluding that defamation claim filed against defendants "in their individual capacities was not filed under the TTCA, and thus section 101.106(e) [of the Texas Civil Practice & Remedies Code] does not mandate dismissal"); *Meroney v. City of Colleyville*, No. 2-05-195-CV, 2006 WL 1452103, *5 (Tex. App.–Ft. Worth May 25, 2006, no pet.)("[W]e conclude and hold that a suit alleging intentional tort claims against a governmental entity that does not

attempt to characterize those claims as coming within the scope of section 101.021 [of the Texas Tort Claims Act] is not a suit brought under the [Act] and does not preclude a suit against an employee of the entity in his or her individual capacity for causes of action regarding the same subject matter"). The motion to dismiss the state law intentional tort claims against Officers Barnes and Montes is DENIED.

## I.  Wrongful death claims against the Officers Montes and Barnes and the City

Plaintiffs allege that Defendant Montes' use of excessive deadly force and Defendant Barnes' refusal to seek immediate medical attention for Plaintiffs' Decedent resulted in his wrongful death. Tex. Civ. Prac. & Rem. Code § 71.002. To support a claim for wrongful death under Texas law, Plaintiffs must allege that death resulted from the negligent or wrongful act of a person or his agent or servant. *Id.*

The City asserts governmental immunity under the TTCA in defense of this claim and moves for dismissal of the wrongful death claim against the City. This case is virtually identical to *Pineda v. City of Houston*. 175 S.W.3d 276 (Tex. App.–Houston [1st Dist.] 2004, no pet.). In *Pineda*, the Court of Appeals stated the following:

> Here, the gravamen of appellants' claim is that City of Houston police officers wrongfully killed Pedro Oregon Navarro. Thus, in contrast to *Delaney*, the tortfeasors are the governmental employees whose conduct is the subject of the complaint, thereby satisfying section 101.057(2)'s requirement of a nexus between appellants' claims against the City and the intentional tort. If a plaintiff pleads facts which amount to an intentional tort, no matter if the claim is framed as negligence, the claim generally is for an intentional tort and is barred by the TTCA. *See Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001); *City of Laredo v. Nuno*, 94 S.W.3d 786, 789 (Tex. App.–San Antonio 2002, no pet.); *Tarrant County Hosp. Dist. v. Henry*, 52 S.W.3d 434, 450 (Tex. App.–Fort Worth 2001, no pet.); *Medrano v. City of Pearsall*, 989 S.W.2d 141, 144 (Tex. App.–San Antonio 1999, no pet.). A plaintiff cannot circumvent the intentional tort exception by couching his claims in terms of negligence. *See Huong v. City of Port Arthur*, 961 F.Supp. 1003, 1008-09

(E.D. Tex.1997) (plaintiffs cannot circumvent intentional tort exception to waiver of liability by simply pleading negligence when shooting event upon which they base their claims is actually intentional tort).

175 S.W.3d at 282.  The Court of Appeals concluded that the City has immunity from the plaintiff's wrongful death claim under the intentional tort exception to the TTCA.  *Id.* at 284.  Based on *Pineda*, the motion to dismiss Plaintiffs' wrongful death claim against the City is GRANTED.  The motion to dismiss Plaintiffs' wrongful death claim against Officers Montes and Barnes is DENIED.[10]

**J.     Exemplary damages claim against Officers Montes and Barnes and the City**

The City moves that plaintiffs' claim for exemplary damages against the City be dismissed because the City is not liable for such damages. Because punitive damages against a municipality would in effect punish the taxpayers, a municipality is not liable for such damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271(1981). The Supreme Court has held that punitive or exemplary damages are not available under section 1983 against a municipality, but are available in a suit against an official personally.  *Kentucky v. Graham*, 473 U.S. 159, 167 n.13 (1985).  Thus, the City's motion to dismiss Plaintiffs' claim for exemplary damages is GRANTED.

_____

[10]Plaintiffs assert a claim for wrongful death in their Complaint; however, they are unclear whether they are asserting an independent state law wrongful death claim or a wrongful death claim brought under section 1983.  The Court is dismissing the independent state law wrongful death claim against the City; however, the Court is not dismissing the wrongful death claim against the City brought under section 1983 and 1988.  *See Rhyne,* 973 F.2d at 391; *see Aguillard v. McGowen*, 207 F.3d 226, 231 (5th Cir. 2000); *see Diaz v. Mayor of Corpus Christi*, 121 Fed. Appx. 36, 39 (5th Cir. 2005)("[I]t is the law of this circuit that individuals who are within the class of people entitled to recover under Texas's wrongful death statute have standing to sue under § 1983 for their own injuries from the deprivation of decedent's constitutional rights").  The Texas Supreme Court has granted a petition for review in a case that addresses wrongful death claims against governmental entities brought under section 1983. *County of Dallas v. Sempe*, 151 S.W.3d 191 (Tex. App.–Dallas 2004, pet. granted).  The parties will need to submit further briefing on this issue when any dispositive motions are filed.

**IV. Conclusion**

The Court ORDERS Plaintiffs to file a Rule 7 reply to Defendants' qualified immunity defense to the section 1981 claims against Officers Montes and Barnes, the section 1983 individual capacity claim against Officer Barnes for failure to protect from the use of excessive force, and the section 1983 individual capacity claims against Officers Montes and Barnes for deprivation of the right to familial association.[11]   The Court will postpone ruling on the motion to dismiss these claims pending receipt of a Rule 7 reply to Defendants' qualified immunity defense.

The motion to dismiss the section 1983 individual capacity claims against Officer Montes and Barnes for violations of Cervantes' due process rights under the Fifth and Fourteenth Amendments is GRANTED.   The motion to dismiss the section 1983 individual capacity claims against Officers Montes and Barnes for cruel and unusual punishment is GRANTED.

The motion to dismiss the section 1983 individual capacity claims against Officer Montes for (1) the use of excessive force and (2) deprivation of a pretrial detainee's constitutional right to medical care is DENIED.

The motion to dismiss the section 1983 individual capacity claim against Officer Barnes for deprivation of a pretrial detainee's constitutional right to medical care is DENIED.

The motion to dismiss the section 1983 claims against the City  is DENIED.

The motion to dismiss the section 1985(3) conspiracy claims against the City and Officers Montes and Barnes is GRANTED.

The motion to dismiss the state law intentional tort claims against the City is GRANTED. The motion to dismiss the state law negligent hiring and negligent training claim against the City is

---

[11]The Rule 7 reply is due two weeks from the date that this Order is signed.

GRANTED.  The motion to dismiss the state law intentional tort claims against Officers Montes and Barnes is DENIED. The motion to dismiss the state law wrongful death claim against the City is GRANTED.  The motion to dismiss the state law wrongful death claims against Officers Montes and Barnes is DENIED.

The motion to dismiss Plaintiffs' claim for exemplary damages is GRANTED as to the City, but it is DENIED as to the Officers.

It is so ORDERED.

SIGNED this 15th day of November, 2006.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE