# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **HENRY B. CERVANTES,** *Individually and as Representatives of* **the** ESTATE OF JOHN HENRY CERVANTES, SAMANTHA RIVERA**, *Individually and as Next Friend to* ANDRU CERVANTES, *a Minor*, STEPHANIE CRIM, *as Next Friend to* JOHN HENRY CERVANTES JR. and PATRICE MARIE CERVANTES, *Minors*, and JOSEPHINE MENDEZ** | § § § § § § § § § § § | **Civil No. SA 06 CA 0235 XR** |
| **v.** | § § | |
| **THE CITY OF SAN ANTONIO, REYNALDO MONTES,** *Individually and in his Official Capacity***; and** **RACHEL BARNES,** *Individually and in her Official Capacity* | § § § § § | |

## ORDER

On this date, the Court considered Defendant Officers Reynaldo Montes and Rachel Barnes's Motion for Summary Judgment, as well as Plaintiff Henry B. Cervantes's Response. After careful consideration, the Court **DENIES** Defendants' motion.

## I.  Background

On March 17, 2006, Plaintiffs Samantha Rivera and others filed their *Original Complaint*, wherein Plaintiffs alleged, *inter alia*, that Defendant Reynaldo Montes ("Montes") and Defendant Rachel Barnes ("Barnes") violated the rights of John Henry Cervantes (deceased, hereinafter "Decedent") pursuant to 42 U.S.C. § 1983 by using excessive force, which resulted in the death of Decedent. In addition, the City of San Antonio ("City") was named as a Defendant.

On April 27, 2006, Defendants Montes and Barnes filed their *Defendant San Antonio Police Officers Reynaldo Montes and Rachel Barnes' Motion to Dismiss*, wherein Montes and Barnes asserted, *inter alia*, the defense of qualified immunity. On June 1, 2006, Defendant City filed its *Defendant City of San Antonio's Motion to Dismiss*.

On November 15, 2006, the Court issued its *Order*, wherein qualified immunity was addressed and the Court granted in part and denied in part various portions of the Defendants' motions.

On November 28, 2006, Plaintiff Henry B. Cervantes ("Cervantes") filed his *Henry B. Cervantes' Unopposed Motion in Intervention*. On December 12, 2006, the Court entered its *Order* granting the motion.

On January 5, 2007, *Plaintiff Henry B. Cervantes' Original Complaint* was filed.

On February 20, 2007, Defendants Montes and Barnes filed their second *Defendant Officers Reynaldo Montes and Rachel Barnes' Motion to Dismiss*.

On May 9, 2007, the Court issued its *Order*, wherein qualified immunity was addressed and the Court granted in part and denied in part various portions of the Defendants' motions. As a result, the following claims remained pending:

1.  The section 1983 individual capacity claims against Montes for (1) the use of excessive force and (2) deprivation of pretrial detainee's constitutional right to medical care.

2.  The section 1983 individual capacity claim against Barnes for deprivation of a pretrial detainee's constitutional right to medical care.

3.  The section 1983 claims against the City.

4.  The state law wrongful death claim against Montes in his individual capacity based

on assault.

On March 14, 2008, Defendant City filed its *Defendant City of San Antonio Motion for Summary Judgement*.

On March 26, 2008, Plaintiff Henry B. Cervantes filed his *Plaintiff Henry B. Cervantes' Unopposed Stipulation of Dismissal of Claims Against the City of San Antonio*.  The Court granted the motion the same day.

On March 28, 2008, Defendants Montes and Barnes filed their *Defendant Officers Reynaldo Montes and Rachel Barnes' Motion for Summary Judgement*.

On April 14, 2008, Plaintiff Henry B. Cervantes filed his *Plaintiff Henry B. Cervantes' Unopposed Stipulation of Dismissal of Claims Against Rachel Barnes*.  The Court granted the motion on April 15, 2008.

Also on April 15, 2008, Plaintiff Henry B. Cervantes filed his *Plaintiff Henry B. Cervantes' Response to Defendant Officers Reynaldo Montes and Rachel Barnes' Motion for Summary Judgment*.

## II.  The Summary-Judgment Evidence

In support of their motion for summary judgment, Defendants Montes and Barnes provide: (A) San Antonio Police Department Shooting Investigation Excerpts, which are excerpts from the department's Internal Affairs Report; (B) the Statement of Officer Reynaldo Montes, taken the night of the incident; (C) the Statement of Officer Rachel Barnes, taken the night of the incident; (D) an Affidavit and Report of Commander Albert Rodriguez, which includes his opinions and observations; (E) Deposition Excerpts of Samantha Rivera; (F) the Statement of Samantha Rivera, taken the night of the incident; (G) alleged Deemed Admissions by Plaintiff Samantha Rivera propounded by Officer Reynaldo Montes; and (H) alleged Deemed Admissions by Plaintiff

Samantha Rivera propounded by Officer Rachel Barnes.  In his response to the motion for summary judgment, Plaintiff Cervantes includes an Appendix containing Plaintiff Cervantes's objections to Defendants Montes and Barnes's summary judgment evidence.  Therein, Plaintiff objects to exhibits A, B, C, D, G, and H in their entirety.  The Court need not rule on these objections because it is not relying on these exhibits in ruling on the instant motion. Plaintiff Cervantes's Response also heavily relies on Plaintiff Samantha Rivera's deposition testimony.

Defendants Montes and Barnes allege that on March 2, 2006, Plaintiff Rivera was being violently assaulted by her boyfriend, the Decedent John Henry Cervantes, at their residence.  Rivera made a 9-1-1 emergency call at which time Decedent ripped the phone from the wall.  San Antonio Police Officers Montes and Barnes responded to investigate the 9-1-1 hang-up call.  Upon arriving at the residence, cries for help were heard by the officers coming from inside the residence.  When they entered the residence, the officers observed shattered glass on the floor and bloodstains on the wall.  They followed the sound of the cries for help to the bedroom and discovered Decedent allegedly in the act of physically assaulting a bloodied Rivera with a series of "stab-like" blows.  When Montes purportedly yelled in a loud voice, "Hey, what's going on, what are you doing, what are you doing," the Decedent, according to Defendants, lunged at Montes, placing him in imminent fear of death or serious bodily injury.  Montes fired one round from his weapon, fatally injuring Decedent.

Plaintiff Cervantes alleges that Rivera and Decedent were involved in a family disturbance at their residence on March 2, 2006.  During the disturbance, Rivera attempted to dial 9-1-1, but Decedent prevented her from doing so when he ripped the phone out of the wall.  Rivera and Decedent engaged in a physical altercation wherein each used physical force against the other.  The altercation eventually made its way into the bedroom of the residence, where Rivera yelled at

Decedent.  While in the bedroom, Rivera recalls hearing a voice come from the front of the residence, which caused Decedent and herself to cease their physical altercation.  Montes and Barnes entered through the front of the house and made their way to the bedroom, which they recognized as the source of the commotion.  Based on the hang-up nature of the 9-1-1 call, Montes and Barnes had no knowledge of any events that were transpiring inside the location at their arrival.  According to Plaintiffs, as Rivera and Decedent stood still and silent in the bedroom, five to seven feet apart, Montes suddenly appeared in the entrance to the bedroom, and without warning or provocation, fired a single shot from his gun which struck Decedent in the torso, killing him.  Allegedly, Decedent was in a well lit area, unarmed, and made no movements toward Montes or Barnes.  Plaintiff alleges that at no time did Montes announce his presence or make any directives to the deceased before firing.

## III.  Standard of Review

The Federal Rules provide that summary judgment "shall be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law."[1]  A party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and identifying those portions of the record which it believes demonstrate the absence of a genuine issue of material fact.[2]  To satisfy this burden, the movant must either submit evidentiary documents that negate the existence of some material element of the non-moving party's claims or defense or, if the issue is one for which the non-moving party has the burden of proof at trial, merely point out that the evidentiary documents contain insufficient proof concerning an essential element of the

---

[1] FED. R. CIV. P. 56(c).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

moving party's claims.[3]

The party opposing a motion must present affirmative evidence in order to defeat a properly supported motion for summary judgment.[4]   The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact.[5]   The dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.[6]  All the evidence and inferences drawn from that evidence must be viewed in the light most favorable to the party opposing the motion for summary judgment.[7]

## IV.  Analysis

In Officers Montes and Barnes's motion for summary judgment, they assert that they are (1) entitled to qualified immunity for claims brought pursuant to 42 U.S.C. § 1983; (2) entitled to official immunity for claims brought pursuant to state intentional tort law; and (3) not liable for state negligence claims due to the fact that the City of San Antonio is a defendant.  Each will be addressed below.

### A.  42 U.S.C. § 1983 Excessive Force Claim

Qualified immunity protects government officials performing discretionary functions from liability for civil damages insofar as their conduct does not violate clearly-established statutory or

---

[3] *Id.* at 325.

[4] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

[5] *Id.* at 247-248.

[6] *Id.*

[7] *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

constitutional rights of which a reasonable person would have known.[8]   Evaluating qualified immunity is a two-step process.  First, the court must determine whether plaintiffs have stated a violation of a constitutional right.[9]  Second, if a constitutional right is found to be violated, then the court must determine whether the right was clearly-established.[10]  The relevant, dispositive inquiry in determining whether a right is clearly-established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted.[11]

For the first step, all claims that law enforcement officers have used excessive force in the course of an arrest, investigatory stop, or other seizure of a free citizen should be analyzed under the reasonableness standard of the *Fourth Amendment*.[12]  To bring an excessive force claim under the *Fourth Amendment*, a plaintiff must show that he was seized.[13]  Apprehension by the use of deadly force is a seizure subject to the reasonableness requirement of the *Fourth Amendment*.[14]

The test of reasonableness under the *Fourth Amendment* requires careful attention to the facts and circumstances of each particular case,[15] including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively

---

[8] *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).

[9] *Hope v. Pelzer*, 536 U.S. 730, 736 (2002).

[10] *Id.* at 739.

[11] *Saucier v. Katz*, 533 U.S. 194, 202 (2001).

[12] *Graham v. Connor*, 490 U.S. 386, 395 (1989).

[13] *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004).

[14] *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

[15] *Brosseau v. Haugen*, 543 U.S. 194, 201 (2004).

resisting arrest or attempting to evade arrest by flight.[16]   The test is not capable of precise definition or mechanical application.[17]   Moreover, "reasonableness in these circumstances 'must embody allowance for the fact that police officers are often forced to make split-second judgments - in circumstances that are tense, uncertain, and rapidly evolving.'"[18]

The Fifth Circuit has found that deadly force by a police officer was objectively reasonable in a number of cases.  For example, in *Reese v. Anderson*, despite being repeatedly ordered to raise his hands, a car passenger kept raising and lowering them, allegedly indicating to the officers that he had a gun.[19]   The Court found the officer's use of deadly force on the passenger was reasonable under the circumstances.[20]   Additionally, in *Mace v. City of Palestine*, the Court affirmed the district court's grant of qualified immunity for an officer who shot and killed a man who was "intoxicated, agitated, breaking windows, shouting, and brandishing an eighteen to twenty inch sword."[21]   The man also "did not respond to commands to drop the sword or to stop moving toward the officers."[22] The Court noted that "[u]se of deadly force is not unreasonable when an officer would have reason to believe that the suspect poses a threat of serious harm to the officers or others."[23]

More recently, on May 28, 2008 in  *Lehman v. Leichliter*, the Fifth Circuit held that a police

---

[16] *Graham*, 490 U.S. at 396.

[17] *Id.*

[18] *Hathaway v. Bazany*, 507 F.3d 312, 320-21 (quoting *Graham*, 490 U.S. at 396-97).

[19] 926, F.2d 494 (5th Cir. 1991).

[20] *Id.*

[21] 333 F.3d 621, 624 (5th Cir. 2003).

[22] *Id.*

[23] *Id.*

officer's use of deadly force was objectively reasonable.[24]  In *Lehman*, an officer answered a 9-1-1 call from the decedent's sister stating that the decedent was drunk and physically abusive.[25]  Before the officer arrived, the decedent had vandalized adjacent apartments and threatened a resident.[26]  The sister's boyfriend advised the officer that the decedent needed to be subdued by the use of pepper spray.[27]  The officer had also been informed by dispatch that shots had been fired in connection with the disturbance.[28]  Further, the decedent, standing more than six feet tall and weighing over 200 pounds, was substantially larger than the officer.[29]  When the decedent advanced toward the officer from ten to fifteen feet way, the officer fatally shot him.[30]

In the case at bar, Defendant Montes argues that he was forced to act instantaneously in self-defense to save his life and that his actions were those of a reasonable officer who reasonably perceived that his life was in immediate jeopardy.  Defendant Officer Barnes did not fire her weapon and, therefore, did not subject Decedent to the same constitutional violation.  Montes also alleges that he and Barnes followed the sound of cries for help to the bedroom and discovered Decedent in the act of physically assaulting a bloodied Rivera with a series of "stab-like" blows.  Further, he alleges that he yelled out "Hey, what's going on, what are you doing, what are you doing," at which

---

[24] *Lehman v. Leichliter*, 2008 U.S. App. LEXIS 11268 (5th Cir. May 28, 2008) (The Court is of the opinion that Defendants Montes and Barnes would have included this case in their motion for summary judgment had the Fifth Circuit resolved it sooner or Defendants filed later).

[25] *Id.* at *2.

[26] *Id.*

[27] *Id.* at *3.

[28] *Id.* at *9.

[29] *Id.*

[30] *Id.* at *3.

point Decedent lunged at Montes, and Montes shot Decedent.  However, Plaintiffs have presented evidence that Montes immediately fired his gun at Decedent upon entering the bedroom, without announcing his presence or issuing any commands.  Plaintiffs have presented further evidence that Rivera and Decedent stood still and silent in the bedroom, five to seven feet apart.  Additionally, Plaintiffs allege that the Decedent was in a well lit area, unarmed, and made no movements toward Montes or Barnes.  Moreover, Montes and Barnes had no knowledge of any events that had transpired inside the location at their arrival.

The facts of this case are distinguishable from those examples above in which the Fifth Circuit found deadly force by police officers to be objectively reasonable.  Unlike in *Reese v. Anderson*, there is controversy as to whether Montes verbally announced his presence or issued commands to Decedent.  Unlike in *Mace v. City of Palestine*, there is controversy as to whether Decedent actually and visibly brandished a weapon.  Additionally, the officer in *Mace* fired his weapon only after the deceased failed to respond to the officer's orders to drop his weapon and stop advancing towards him.  Furthermore, in *Lehman v. Leichliter*, the officer knew that the deceased was intoxicated, abusive, threatening others, engaging in property damage, and had possibly discharged a firearm.  In this case, due to the nature of the 9-1-1 hang-up call, Montes and Barnes had no knowledge of any events that had transpired or were transpiring at the residence upon their arrival.  Also, in the case at hand there were two police officers on duty rather than one.  Moreover, there is a dispute as to whether Decedent was attacking Rivera with stab like motions or whether Decedent was calmly standing five to seven feet away from Rivera.  Lastly, there is controversy as to whether Decedent was charging or lunging at Officers Montes and Barnes or standing still.

Because genuine issues of material fact exist concerning the actions of Officer Montes and the Decedent, Plaintiffs' excessive force claim under § 1983 survives summary judgment. As stated

previously, Plaintiff Cervantes has dismissed all his claims against Defendant Barnes.  Therefore, Defendant Montes's motion for summary judgment on Plaintiffs' § 1983 claim of excessive force is denied.

## B.  State Law Intentional Tort Claims

Defendant Officers Montes and Barnes assert that they are entitled to official immunity for Plaintiff's state intentional tort claims.  Defendants Montes and Barnes move for summary judgment on the state intentional tort claims based on official immunity.

Governmental employees, in their official capacity, are entitled to official immunity from suit arising from (1) the performance of their discretionary duties; (2) in good faith; and (3) within the scope of their authority.[31]   The "good faith" test applied by Texas law in determining official immunity is substantially the same standard used for qualified immunity determinations in Federal section 1983 actions.[32]  As previously stated, Plaintiff Cervantes has dismissed all his claims against Defendant Barnes.  Therefore, the Court denies Defendant Montes's motion for summary judgment based on official immunity for the same reasons discussed above.

## C.  State Law Negligence Claim

Defendant Officers Montes and Barnes assert that Plaintiffs' claim based on negligence is barred under TTCA §101.106 pursuant to their election of remedies in suing the City of San Antonio.  TTCA §101.106 provides in pertinent part:

> (a) The filing of a suit under this chapter against a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against any individual employee of the governmental unit

---

[31] *Austin v. Johnson*, 328 F.3d 204, 211 (5th Cir. 2003); *see also City of Lancaster v. Chambers*, 883 S.W.2d 650, 653 (Tex. 1994).

[32] *Cantu v. Rocha*, 77 F.3d 795, 808 (5th Cir. 1996).

regarding the same subject matter.

(b) The filing of a suit against any employee of a governmental unit constitutes an irrevocable election by the plaintiff and immediately and forever bars any suit or recovery by the plaintiff against the governmental unit regarding the same subject matter unless the governmental unit consents.
. . .

(e) If a suit is filed under this chapter against both a governmental unit and any of its employees, the employees shall immediately be dismissed *on the filing of a motion by the governmental unit.*

Defendants Montes and Barnes rely on §101.106(a) and (b) for their proposition as well as an interpretation of case law; however, §101.106(e) states that it is necessary that Defendant City, not Defendants Montes and Barnes, file a motion requesting such relief.  Therefore, Defendants motion for summary judgment on the state negligence claim is denied.[33]

## V.  Conclusion

For the foregoing reasons, the Court **DENIES** Defendant Officers Reynaldo Montes and Rachel Barnes's Motion for Summary Judgment.

It is so ORDERED.

SIGNED this 23rd day of June, 2008.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

---

[33] The Court will reconsider the issue if it is presented with a motion to dismiss by the City.