## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **HENRY B. CERVANTES,** *Individually and as Representative of* **the ESTATE OF JOHN HENRY CERVANTES, SAMANTHA RIVERA,** *Individually and as Next Friend to* **ANDRU CERVANTES,** *a Minor,* **STEPHANIE CRIM,** *as Next Friend to* **JOHN HENRY CERVANTES JR. and PATRICE MARIE CERVANTES,** *Minors,* **and JOSEPHINE MENDEZ** | § § § § § § § § § § § § | |
| | § | **Civil No. SA-06-CA-0235-XR** |
| **v.** | § § | |
| **THE CITY OF SAN ANTONIO, REYNALDO MONTES,** *Individually and in his Official Capacity*; **and RACHEL BARNES,** *Individually and in her Official Capacity* | § § § § § | |

## ORDER

On this date, the Court considered Defendant City of San Antonio's Motion for Summary Judgment. (Docket No. 75). After careful consideration, the Court grants Defendant's motion in part but does not yet terminate the City from this case.

### I.  Procedural History

On March 17, 2006, Plaintiffs Samantha Rivera ("Rivera"), Stephanie Crim ("Crim"), and Josephine Mendez ("Mendez") (collectively "Plaintiffs") filed a complaint against the City of San Antonio ("City") and police officers Reynaldo Montes and Rachel Barnes ("Officers"), seeking compensatory damages, punitive damages, and injunctive relief for a violation of civil rights resulting from the death of John Henry Cervantes ("Decedent"). (Docket No. 1, at 1-2). Plaintiffs

claim that the death of Decedent directly resulted from a use of excessive force by Officers and an official policy of the City of encouraging the same.  (*Id.*, at 2).  Rivera brought claims both in her individual capacity and as next friend of Andru Cervantes, son of Decedent.  (*Id.*, at 1).  Crim brought claims as next friend of John Henry Cervantes Jr. and Patrice Marie Cervantes, children of Decedent.  (*Id.*).  Josephine Mendez brought claims in her individual capacity as the mother of Decedent.  (*Id.*, at 3).

On April 27, 2006, the Officers filed a motion to dismiss the claims (Docket No. 9); this was followed by a motion to dismiss from the City on June 1, 2006.  (Docket No. 16).  Plaintiffs filed a response to the motions to dismiss on July 5, 2006.  (Docket No. 32).  On November 15, 2006, this Court issued an order dismissing all claims against the City except for a claim under 42 U.S.C. § 1983.  (Docket No. 37).

On November 28, 2006, Henry B. Cervantes ("Cervantes"), father of Decedent, filed an unopposed motion to intervene as an individual and as representative of the estate of Decedent. (Docket No. 38).  The Court granted Cervantes's motion on December 12, 2006, and Cervantes filed an amended complaint on January 5, 2007.  (Docket No. 43; Docket No. 48).

On March 14, 2008, the City filed a motion for summary judgment, arguing that if the officers committed any violation of Plaintiffs' constitutional rights, they were not acting in accordance with an official policy or practice.  (Docket No. 75, at 10-13).  Additionally, the City argued that Plaintiffs' claims for failure to train must fail because the training policies of the San Antonio Police Department meet state standards.[1]  (*Id.*, at 13-14).  Lastly, the City moves for

---

[1]Although the City raises summary judgment arguments based on a failure to train, the Court notes that the only Plaintiff to plead this claim, Henry Cervantes, voluntarily dismissed all claims against the City on March 26, 2008.  (Docket No. 76).  None of the plaintiffs who still have claims pending against the City have pled a failure to train, so the Court need not consider

summary judgment on all claims raised by Rivera in her individual capacity because since she and Decedent were not legally married, she is not a legal heir of Decedent.  (*Id.*, at 14).

On March 26, 2008, Plaintiff Cervantes filed a stipulation of dismissal of claims against the City.  (Docket No. 76).  This was granted the same day, and Cervantes's claims against the City were dismissed without prejudice.  (Docket No. 77).  Therefore, at this time, the only claims remaining against the City are the 42 U.S.C. § 1983 claims by Rivera, Crim, and Mendez.

On March 28, 2008, the Officers filed a motion for summary judgment; this motion was denied by the Court on June 23, 2008.  (Docket No. 78; Docket No. 85).

On May 15, 2008, Plaintiffs' counsel James Myart, Jr. filed a motion to withdraw as counsel, which the Court granted the next day.  (Docket No. 83; Docket No. 84).  Plaintiffs Crim and Mendez retained new counsel in the matter; however, Plaintiff Rivera is proceeding *pro se* in this matter. (Docket No. 87).

Currently pending is the City's motion for summary judgment.  (Docket No. 75).  Plaintiffs have not filed responses to the motion.

## II. Factual Background

Plaintiffs allege that Rivera and Decedent, her boyfriend, were involved in a family disturbance at their residence on March 2, 2006.  During the disturbance, Rivera attempted to dial 911, but Decedent prevented her from doing so when he ripped the phone out of the wall.  Rivera and Decedent engaged in a physical altercation wherein each used physical force against the other. The altercation eventually made its way into the bedroom of the residence, where Rivera yelled at Decedent.  While in the bedroom, Rivera recalls hearing a voice come from the front of the

───────────────────

this claim further.

residence, which caused Decedent and herself to cease their physical altercation. Officers Montes and Barnes entered through the front of the house and made their way to the bedroom, which they recognized as the source of the commotion. Based on the hang-up nature of the 911 call, the Officers had no knowledge of any events that were transpiring inside the location at their arrival. According to Plaintiffs, as Rivera and Decedent stood still and silent in the bedroom, five to seven feet apart, Officer Montes suddenly appeared in the entrance to the bedroom, and without warning or provocation, fired a single shot from his gun which struck Decedent in the torso, killing him. Allegedly, Decedent was in a well-lit area, unarmed, and made no movements toward the Officers. Plaintiffs allege that at no time did Montes announce his presence or make any directives to the Decedent before firing.

The Officers allege that on March 2, 2006, Rivera was being violently assaulted by Decedent at the residence she shared with him. Rivera made a 911 emergency call at which time Decedent ripped the phone from the wall. Officers Montes and Barnes responded to the residence. Upon arriving, cries for help were heard by the officers coming from inside the residence. When they entered the residence, the Officers observed shattered glass on the floor and bloodstains on the wall. They followed the sound of the cries for help to the bedroom and discovered Decedent allegedly in the act of physically assaulting a bloodied Rivera with a series of "stab-like" blows. (Docket No. 75, Exhibit A, at 135). When Montes purportedly yelled in a loud voice, "Hey, what's going on, what are you doing, what are you doing," the Decedent, according to Defendants, lunged at Montes, placing him in imminent fear of death or serious bodily injury. (*Id.*). Montes fired one round from his weapon, fatally injuring Decedent.

4

### III.  Standard of Review

In order to grant summary judgment, a court must determine that there is no longer any genuine issue of material fact that would warrant further proceedings.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  A genuine issue of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party."  *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).  All the evidence on the record is considered, but the court should refrain from making credibility determinations or weighing the evidence.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  In evaluating a motion for summary judgment, all reasonable doubts about factual evidence are construed in the light most favorable to the non-moving party.  *Anderson*, 477 U.S. at 255.  However, the nonmoving party must present facts beyond the allegations in the pleadings to avoid summary judgment.  *Celotex*, 477 U.S. at 324.  Absent proof from the nonmovant, a court is not required to assume that the nonmoving party could or would have proven all facts necessary to its claim.  *Id.* at 322-23.

### IV. Analysis

<u>Plaintiff Rivera in Her Individual Capacity</u>

The City moves for summary judgment on all claims raised by Plaintiff Rivera in her individual capacity, arguing that because Rivera and Decedent were not married, Rivera does not qualify as either the legal heir or a statutory beneficiary under the Texas Wrongful Death Act. (Docket No. 75, at 14).  In order to have standing to bring a § 1983 claim, the plaintiff must be a beneficiary under the applicable state statute.  42 U.S.C. § 1988(a).  Texas law limits recovery in wrongful death cases to the surviving spouse, children, and parents of the deceased; marriage must be proven by legal documents, and common law marriage is not recognized in this regard.  Tex. Civ.

Prac. & Rem. Code §§ 71.004, 71.004 (Vernon 2007).  Personal injury actions pass to the heirs and legal representatives of the deceased.  *Id.* at § 71.021.  In this case, Plaintiff Rivera has admitted that she was not married to Decedent.  (Docket No. 75, Exhibit A, at 128).  She has not established herself as either Decedent's heir or legal representative.  As such, she does not have standing to bring a claim against the City under § 1983 in her individual capacity.[2]

Compliance with Official Policy

The City moves for summary judgment arguing that municipalities are only liable for the actions of city officials when the officials act in accordance with official policy or custom.  (Docket No. 75, at 10).  According to the Supreme Court, a municipality cannot be held liable in a § 1983 action solely on a theory of *respondeat superior*; the policy or practice of the municipality must "of some nature cause[] a constitutional tort."  *Monell v. New York City Dep't of Social Servs.*, 437 U.S. 658, 691-93 (1978).  Building from there, the Fifth Circuit has stated that "[a] municipality is liable under § 1983 for a deprivation of rights. . . that is inflicted pursuant to official policy."  *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc).  The *Webster* court found that "official policy" can include both written statements of policy and "a persistent, widespread practice."  *Id.* In order for an official policy to lead to municipal liability, a plaintiff must also establish that the policy was the "moving force" of the constitutional violation.  *Piotrowski v. City of Houston*, 237 F.3d 567, 578 (5th Cir.), *cert. denied*, 534 U.S. 820 (2001).

In this case, the official written policy does not itself cause a constitutional violation.  The Use of Force policy [Proc. 501.07] requires that officers engage in the use of deadly force "only to protect an officer or another person from what is reasonably believed to be an immediate threat of

---

[2]Although Plaintiff Rivera has no pending state law claims against the City, the Court is concerned about possible issues with her standing in the state law claims against the Officers.

death or serious bodily injury." (Docket No. 75, Exhibit F, at 5). This procedure is consistent with provisions of the Texas Penal Code governing use of deadly force in defense of person and the use of force by law enforcement officers. *See* Tex. Penal Code §§ 9.32, 9.51 (Vernon 2008). Because the official written policy does not advocate unconstitutional treatment, Plaintiffs must be able to prove an unconstitutional practice in order to prevail.

In order to prove a practice sufficient to constitute municipal policy, courts have required that the municipality have knowledge, either actual or constructive, of the unconstitutional practice and fail to take action to remedy it. *See Bennett v. City of Slidell*, 728 F.2d 762, 768 (5th Cir. 1984), *cert denied*, 472 U.S. 1016 (1985). Proving constructive notice requires "evidence that the incidents were the 'subject of a prolonged public discussion or of a high degree of publicity.'" *Pineda v. City of Houston*, 291 F.3d 325, 328 (5th Cir. 2002) (citing *McConney v. City of Houston*, 863 F.2d 1180, 1184 (5th Cir. 1989)). Isolated violations of written policies, without more, do not give rise to a customary practice sufficient to constitute policy. *Bennett*, 728 F.2d at 768 n.3; *Maddux v. Officer One*, 90 F. App'x 754, 776. However, "persistent, often repeated constant violations [can] constitute custom and policy." *Brown v. Bryan County, Okla.*, 53 F.3d 1410, 1420 (5th Cir. 1995). Once an unconstitutional policy is established, a single application will be enough to impose liability upon the municipality. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478 n.6 (1986). In this case, Plaintiffs have not brought forth any evidence that would establish that the actions taken by Officer Montes, if unconstitutional, resulted from an official practice in which the City would be considered a "moving force." There is not sufficient evidence in the record to contradict the City's contention that no official policy permits the use of deadly force in an unconstitutional manner.

Using a ratification theory, Plaintiffs argue that the City should be held liable for "ratifying"

7

the illegal use of deadly force by its police officers.  (Docket No. 1, at 10).  The Supreme Court has recognized that "[i]f the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality[.]" *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988). The Fifth Circuit has held, however, that municipal liability does not lie under the ratification theory where a police supervisor accepts the version of events presented by his officers if that version did not show the officers actions to be "manifestly indefensible."  *Coon v. Ledbetter*, 780 F.2d 1158, 1162 (5th Cir. 1986).  Additionally, in order for a municipality to be liable for an alleged constitutional violation, a plaintiff must prove that the actions of the municipality "caused" the violation; this is particularly difficult when any "ratification" takes place after the alleged violation occurred.  Plaintiffs in this case have not brought forth any evidence that the police supervisor should have found the Officers actions "manifestly indefensible" in a manner sufficient to impute liability on the City based on a ratification theory.

Plaintiffs' Remaining Claims

Plaintiffs bring further § 1983 claims against the City for "failure to screen, discipline, supervise, counsel, transfer and control [police] officers."  (Docket No. 1, at 10).  The Court construes these as claims for improper hiring practices and failure to supervise.

Claims for inadequate screening or improper hiring "cannot depend on mere probability that any officer inadequately screened will inflict any constitutional injury."  *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 410 (1997).  The inadequate screening inquiry requires an evaluation of whether there was deliberate indifference on the part of municipal officials, and the standard required to prove this deliberate indifference is high to avoid turning the liability into mere *respondeat superior*. *Id.* at 413 n.1.  Establishing deliberate indifference requires

8

proof that a municipal actor disregarded a known or obvious consequence of his action, and it requires a showing of more than negligence or even gross negligence. *Id.* at 410; *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). The plaintiff must prove that "the plainly obvious consequence of the decision to hire [the specific officer] would be the deprivation of a third party's [specific] federally protected right." *Bryan County*, 520 U.S. at 411.

Evaluation of a claim for failure to supervise is evaluated in the same manner as a claim for failure to train. *Estate of Davis v. City of North Richland Hills*, 406 F.3d 375, 381 (5th Cir. 2005); *see also Allen v. City of Galveston, Tex.*, No. G-06-467, 2008 WL 905905, at *6. To establish municipal liability under § 1983 for failure to supervise, a plaintiff must establish that "(1) the supervisor either failed to train or supervise the subordinate officer; (2) a causal link exists between the failure to train or supervise and the violation of the plaintiff's rights; and (3) the failure to train or supervise amounts to deliberate indifference." *Estate of Davis*, 406 F.3d at 381 (quoting *Smith v. Brenoettsy*, 158 F.3d 908, 911-12 (5th Cir. 1998)). As discussed above, deliberate indifference is a stringent standard requiring proof beyond even gross negligence. *Bryan County*, 520 U.S. at 410.

In its motion for summary judgment, the City addresses failure to train but does not address either hiring or supervision specifically. (Docket No. 75, at 13-14). Nevertheless, the Court is concerned about Plaintiffs' ability to prove these claims at trial. Therefore, the Court orders that the parties have ten (10) days from the issuance of this Order to address the issues of hiring and supervision as they pertain to the § 1983 claims of Plaintiffs against the City.

## V.  Conclusion

For the foregoing reasons, the Court ORDERS the following:

As to the claims against the City of San Antonio made by Samantha Rivera in her individual capacity, summary judgment is GRANTED on behalf of the City of San Antonio, and these claims are DISMISSED.

As to Plaintiffs' claims based on an official policy or practice of unconstitutional conduct, summary judgment is GRANTED on behalf of the City of San Antonio.

The parties are given ten (10) days to address whether Plaintiffs' claims based upon improper hiring and failure to supervise should proceed to trial.

It is so ORDERED.

SIGNED this 17th day of July, 2008.

_____

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE